# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS AIRLINE DIVISION
    Plaintiff,

    v.                                                Case No. 10-C-0203

FRONTIER AIRLINES, INC. and
REPUBLIC AIRWAYS HOLDINGS, INC.
    Defendants.

---

## DECISION AND ORDER

### I.  BACKGROUND

Plaintiff International Brotherhood of Teamsters Airline Division ("IBT") brings this action under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., against defendants Frontier Airlines, Inc. ("Frontier") and Republic Airways Holdings, Inc. ("RAH"), a holding company that purchased Frontier as a subsidiary while it was in bankruptcy.  RAH owns other airline subsidiaries, including Republic Airlines ("Republic"), Chautauqua and Shuttle America.  Recently, RAH purchased Midwest Airlines and currently markets some flights under the Midwest name.  However, RAH does not maintain an independent subsidiary for Midwest; rather, it integrated Midwest's operations with those of its other subsidiaries.  Further, RAH intends to merge Midwest and Frontier into a single airline operated under the Frontier name.

This action arises out of RAH's decision to transfer a portion of Frontier's maintenance work – its "mechanics and related" and "stock clerk" functions – from Denver to Milwaukee.  Plaintiff IBT represents the Frontier employees who perform such work.  As

Frontier transfers this work to Milwaukee, the work will be performed by non-union Republic employees. IBT does not contend that RAH's decision to transfer the maintenance work to Milwaukee is unlawful; rather, it contends that the work in Milwaukee must be performed by Frontier employees consistent with the terms of the collective bargaining agreements between IBT and Frontier.

Before me now is IBT's motion for a preliminary injunction prohibiting RAH from transferring Frontier work to non-union Republic employees and RAH's motion to dismiss the complaint for lack of subject matter jurisdiction. RAH's jurisdictional motion turns on RAH's contention that once it purchased Frontier and began integrating its operations with its other subsidiaries, it arguably formed a "single transportation system" within the meaning of RLA jurisprudence. RAH further contends that if a single transportation system does exist, then IBT no longer represents a majority of the relevant "crafts or classes"[1] because the maintenance employees of RAH's other subsidiaries (who together constitute a majority of the single system) are not represented by any union, let alone IBT. In RAH's view, if IBT no longer represents a majority of the relevant crafts or classes, RAH may disregard the collective bargaining agreements between IBT and Frontier. RAH's position is that I lack subject matter jurisdiction because the principal dispute is whether a single transportation system exists (and, if so, whether IBT represents a majority of the relevant workers) and that this constitutes a "representation dispute" that falls within the exclusive jurisdiction of the National Mediation Board ("NMB"). RAH further argues that even if I had

---

[1] In RLA parlance, the bargaining unit is referred to as the "craft or class." This case involves the mechanics-and-related and stock-clerk crafts or classes. I occasionally refer to the workers in these classes jointly as the "mechanics and stock clerks."

2

jurisdiction, IBT would not be entitled to a preliminary injunction because it has unclean hands.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The RLA governs labor relations in the rail and airline industries, and its purpose is to prevent labor disputes from disrupting commerce among the states. Burlington N. R.R. Co. v. United Transp. Union, 862 F.2d 1266, 1271 (7th Cir. 1988); ABA Section of Labor and Employment Law (hereinafter "ABA Section"), The Railway Labor Act 2 (2d ed. 2005). To this end, the RLA creates a regulatory scheme in which the parties are expected to attempt to resolve their disputes by conference and agreement. RLA § 2, Second, 45 U.S.C. § 152, Second. If the parties are unable to agree, the dispute proceeds to one of several dispute-resolution mechanisms, depending on the nature of the dispute. Courts resolve certain categories of disputes, and bodies such as the National Mediation Board ("NMB") and boards of adjustment resolve others.[2] ABA Section, supra, at 16-18. When a party to a dispute questions the other party's compliance with the RLA and one of the parties seeks judicial relief, the court's first duty is to determine how and where the dispute will be resolved. Id.

RLA jurisprudence recognizes three principal categories of disputes – major, minor and representation. Major disputes are those "that cannot be resolved through interpretation or analysis of a collective bargaining agreement." Burlington N. R.R. Co., 862 F.2d at 1271. Thus, major disputes arise when there is no collective bargaining

---

[2]In the airline industry, carriers and unions establish in their collective bargaining agreements the adjustment boards required by the RLA. ABA Section, supra, at 382-83.

3

agreement or where one party wants to change the terms of the agreement. Id. (quoting Elgin, Joliet & Eastern Ry. v. Burley, 325 U.S. 711, 723 (1945)).

Minor disputes are those involving the application or interpretation of an existing collective bargaining agreement. Id. The RLA prescribes that such disputes be resolved by binding arbitration before a board of adjustment. 45 U.S.C. § 184. Although a federal court has no authority to interpret the terms of a collective bargaining agreement in order to resolve a minor dispute, the court may compel arbitration before the appropriate adjustment board and may enjoin the union from striking while the parties are engaged in arbitration or exhausting other minor dispute-resolution procedures. United Transp. Union v. Gateway W. Ry. Co. ("Gateway Western"), 78 F.3d 1208, 1213 (7th Cir. 1996). Further, a court may enjoin an action that might frustrate the ability of an adjustment board to provide an effective remedy. ABA Section, supra, at 26.

Representation disputes involve the composition of the collective bargaining unit and the identity of that unit's authorized representative for collective bargaining purposes. Gateway Western, 78 F.3d at 1213. RLA Section 2, Ninth,[3] empowers the NMB to resolve

---

[3]RLA Section 2, Ninth provides in relevant part as follows:

If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties, in writing, within thirty days after the receipt of the invocation of its services, the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier. Upon receipt of such certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter. In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other

4

representation disputes and requires carriers to bargain with the representatives certified by the NMB. (The NMB will certify a union if after an election the NMB determines that the union has the support of a majority of the craft or class. See RLA § 2, Fourth, 45 U.S.C. § 152, Fourth.) In a group of cases known as the Switchmen's Trilogy,[4] the Supreme Court held that because Congress fashioned an administrative mechanism for the resolution of representation disputes, such disputes fall within the NMB's exclusive jurisdiction. See ABA Section, supra, at 120. "Thus, once it is clear that a complaint alleges what is properly characterized as a representation dispute, the district court must dismiss the case for lack of subject matter jurisdiction." Gateway Western, 78 F.3d at 1213. The court may not even grant injunctive relief to maintain the status quo, "because to do so would necessarily have the effect, at least during the period of the injunction, of deciding the representation issue." Id. (quoting Air Line Pilots Ass'n, Int'l v. Tex. Int'l Airlines, Inc., 656 F.2d 16, 23, 24 (2d Cir. 1981)). Moreover, when the precise character of the dispute is in doubt (when the dispute, in other words, is only "arguably" representational), a federal court should not proceed, because the NMB has primary jurisdiction to determine whether it has exclusive jurisdiction over the dispute. Id. at 1213-14 (quoting United Transp. Union v. United States, 987 F.2d 784, 789 (D.C. Cir. 1993)).

---

appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier.

45 U.S.C. § 152, Ninth.

[4]Switchmen's Union v. NMB, 320 U.S. 297 (1943); Gen. Comm. of Adjustment v. Missouri-Kan.-Tex. R.R., 320 U.S. 323 (1943); Gen. Comm. of Adjustment v. S. Pac., 320 U.S. 338 (1943).

5

Importantly, in resolving representation disputes, the NMB must determine the composition of the employee craft or class and the scope of the "system" (i.e., the reach of the craft or class as measured by geography or corporate composition). ABA Section, supra, at 120. Under the NMB's interpretation of the RLA, a craft or class "generally includes all employees of the carrier, regardless of work location in the U.S., who perform the job functions that the NMB has identified as part of the craft or class." Id. at 123. Thus, when two carriers combine their operations, such as in a merger or other corporate transaction, a question may arise as to whether the transaction created a "single transportation system." Id. at 124; NMB Representation Manual § 19.501 (Rev. Sept. 8, 2009), available at http://www.nmb.gov (Click "Legal Affairs/Representation," then "Representation Manual") (last viewed April 20, 2010) (listing factors indicating a single transportation system).[5] Because defining the craft or class and determining whether a single transportation system exists are matters relating to the selection of employee representatives, they fall within the NMB's exclusive jurisdiction.

In short, all representation disputes fall within the NMB's exclusive jurisdiction, including those relating to the definition of the craft or class and the determination of whether a single transportation system exists with respect to that craft or class. However, under existing NMB procedures, only unions or employee groups can initiate

---

[5]The question of whether a transaction created a single transportation system may be resolved differently for different crafts or classes employed by the same carrier. ABA Section, supra, at 125. Thus, the NMB may define an airline as a single transportation system with respect to its flight attendants but simultaneously determine that the airline is not a single transportation system with respect to its mechanics.

6

representation proceedings.[6] Further, any certification made by the NMB with respect to the representation of a craft or class prior to a merger or other corporate transaction remains in effect after the transaction unless the NMB issues a new certification or dismisses the prior certification.[7] NMB Representation Manual § 19.7. Thus, carriers that view a merger or other corporate transaction as having created a single transportation system cannot raise this issue with the NMB.

In the present case, no union or employee group disputes the NMB's certification of IBT as the representative of Frontier's mechanics and stock clerks. However, RAH has determined for itself that its acquisition of Frontier and its decision to integrate Frontier's maintenance operations with Republic's maintenance operations have resulted in a single transportation system for the mechanics-and-related and stock-clerk crafts or classes. It has further determined that because IBT no longer represents a majority of workers within these crafts or classes, IBT no longer represents such crafts or classes. Thus, RAH has ceased to recognize the Frontier-IBT collective bargaining agreements and has begun transferring work that would have been governed by such agreements to non-union

---

[6]Pursuant to the NMB Representation Manual, any "organization or individual" may file an application seeking a determination that a single transportation system exists. NMB Representation Manual § 19.4. In Railway Labor Executives' Association v. National Mediation Board, the Circuit Court for the District of Columbia held that the NMB lacks statutory authority to investigate representation disputes arising out of mergers and other corporate transactions either sua sponte or at the request of a carrier. 29 F.3d 655, 658-59 (D.C. Cir. 1994) (en banc). The court held that under Section 2, Ninth of the RLA, only labor organizations and individual employees may initiate representation disputes. Thus, "organization or individual," as used in the NMB Representation Manual, means a labor organization or an individual employed by the carrier, not the carrier itself.

[7]The NMB defines "merger" as "a consolidation, merger, purchase, lease, operating contract, acquisition of control, or similar transaction of two or more business entities." NMB Representation Manual § 19.1.

7

Republic employees.  IBT contends that such conduct constitutes a repudiation of the collective bargaining agreements and gives rise to a major dispute.  Alternatively, it contends that the conduct gives rise to a minor dispute that must be arbitrated and that I must issue an injunction to preserve the ability of the adjustment board to provide an effective remedy.  RAH and Frontier respond that the dispute in question is a representation dispute that falls within the exclusive jurisdiction of the NMB.

I conclude that the present case does not involve a representation dispute.  As discussed above, the RLA requires carriers to recognize and bargain with the union that has been "certified [by the NMB] as the representative of the craft or class."  RLA Section 2, Ninth, 45 U.S.C. § 152, Ninth.  Further, the NMB's certification of a union survives a merger or other corporate transaction unless and until the NMB revokes the union's certification or certifies a new union.  NMB Representation Manual § 19.7.  Thus, a carrier is required to recognize and bargain with a union after a merger even if in the carrier's view the union no longer represents the majority of the craft or class.  A court can enforce the carrier's obligation to recognize the certified union without becoming involved in a representation dispute, since the court is merely recognizing the NMB's existing certification rather than deciding representation issues such as the definition of the proper craft or class or whether a single transportation system exists.  All the court needs to know is that the union currently certified by the NMB is the representative of the craft or class.  The carrier's view on matters such as whether the merger resulted in the creation of a single transportation system and whether the union represents a majority of the relevant workers is simply irrelevant.

8

In 1974, the Seventh Circuit came to the same conclusion in a similar case. In Burlington Northern Inc. v. American Railway Supervisors Association ("ARSA"), the court held that the courts had jurisdiction over a dispute between a carrier and a union following a merger of four railroads into a single carrier. 503 F.2d 58, 60, 62 (7th Cir. 1974). In that case, the union represented a group of mechanical workers at one of the four previously independent railroads, and the carrier took the position that the merger resulted in a single, system-wide craft or class of which the union's members were only a minority. Id. at 62. The carrier thus refused to bargain with the union or submit the parties' dispute to arbitration. Id. The district court dismissed the case for lack of subject matter jurisdiction on the ground that the dispute over whether the union still represented the craft or class fell within the NMB's exclusive jurisdiction over representation disputes. Id. The Seventh Circuit, however, found that the dispute was not representational "because no employee or other union has challenged [the union's] certification." Id. In other words, the court found that because there was "no dispute between competing employee groups, " id. at 60-61, the carrier could not itself create such a dispute and deprive the courts of jurisdiction. Thus, the court proceeded to resolve the merits of the case.

ARSA governs the present case. Like the carrier in ARSA, RAH and Frontier claim that they need not recognize IBT and the Frontier-IBT collective bargaining agreements because RAH's acquisition of Frontier created a single transportation system in which IBT represents only the minority of workers. Further, as in ARSA, the present case does not involve a dispute between competing employee groups over IBT's representation of the crafts or classes. Thus, as in ARSA, the present case does not involve a representation dispute. Although RAH and Frontier attempt to raise representation issues, such as

9

whether a single transportation system exists, they lack the legal capacity to do so. Only their employees can create such a dispute.[8]

Although <u>ARSA</u> governs the present case, I recognize that in later cases, the Seventh Circuit found that certain post-merger disputes between carriers and unions gave rise to representation disputes. See <u>Gateway Western</u>, 78 F.3d at 1216; <u>Air Line Employees Ass'n, Int'l ("ALEA") v. Republic Airlines, Inc.</u>, 798 F.2d 967 (7th Cir. 1986). However, as I explain below, <u>ALEA</u> does not control the present case because in that case the NMB's pre-merger certification of a union expired upon the occurrence of the merger, and thus it involved a situation in which the court was called upon to recognize a union not then certified by the NMB as the representative of the craft or class. Further, <u>Gateway Western</u> is largely consistent with <u>ARSA</u>, even though it does not cite or apply <u>ARSA</u>. To the extent that <u>Gateway Western</u> could be deemed to supercede <u>ARSA</u>, applying <u>Gateway Western</u> to the facts of the present case yields the same outcome as <u>ARSA</u> – namely, that the present case does not involve a representation dispute.

In <u>ALEA</u>, the court held that it lacked jurisdiction over a dispute arising out of a merger in which Northwest Airlines acquired Republic Airlines (<u>not</u> the Republic Airlines currently owned by RAH). Prior to the merger, the union was the certified representative of Republic's ground employees. After the merger, Northwest refused to bargain with the union on the ground that it no longer represented a majority of the craft or class. Relying

---

[8]RAH attempts to distinguish <u>ARSA</u> by pointing out that the <u>ARSA</u> court relied on provisions of a "merger protection agreement" between the parties, whereas the parties in the present case did not enter into such an agreement. However, the presence of the merger protection agreement was not relevant to the court's analysis of the jurisdictional issue. Rather, as I have explained, the court's analysis turned on the absence of a dispute between the carrier's employees over representation.

10

heavily on a Fifth Circuit case, the court held that the merger put the union's status as the ground employees' representative in doubt, and that the NMB had exclusive jurisdiction to resolve the question. ALEA, 798 F.2d at 968 (relying on Int'l Bhd. of Teamsters v. Tex. Int'l Airlines, Inc., 717 F.2d 157 (5th Cir. 1983)). Importantly, however, the court recognized that under then-existing NMB policy, the NMB "consider[ed] the status of the acquired company's [i.e., Republic's] union as the certified bargaining agent to be erased by the merger." Id. at 968 n.4. As noted, the NMB's current policy is that existing certifications remain in force after a merger or other transaction. NMB Representation Manual § 19.7. Thus, while the ALEA court was asked to intervene in a representation dispute and determine whether the union was the proper representative of the craft or class despite the erasure of its certification, in the present case the union's certification as the representative of the relevant crafts or classes remains intact, and my only task is to honor the NMB's certification. Accordingly, ALEA does not govern the present case.[9]

In Gateway Western, the court held that it lacked jurisdiction over a dispute between a rail carrier and a union arising out of the carrier's acquisition of a new subsidiary. Prior to the acquisition, the union represented Gateway Western's mechanics. The collective bargaining agreement required Gateway Western to use a minimum number of union workers on all trains. Gateway Western asked the union to renegotiate the collective bargaining agreement and allow Gateway Western to reduce the required minimum number of workers. The union refused. Thereafter, Gateway Western's parent company

---

[9]I add that the Fifth Circuit case on which ALEA relied also assumed that the union's existing certification expired upon the occurrence of a merger. See Int'l Bhd. of Teamsters, 717 F.2d at 163 ("The Mediation Board has itself adopted the rule that, upon a merger of two airlines, 'all certifications . . . were extinguished by operation of law.'").

11

formed a new subsidiary, Gateway Eastern, and caused that subsidiary to purchase a rail line from another company, Conrail. Gateway Eastern then staffed the trains operating over the old Conrail line with less than the minimum number of union workers required by the collective bargaining agreement between the union and Gateway Western. The union filed suit and alleged that Gateway Western and Gateway Eastern formed a single transportation system and that therefore Gateway Eastern had to abide by the collective bargaining agreement between the union and Gateway Western.

In finding that the case presented a representation dispute over which the court lacked jurisdiction, the court surveyed cases and divided disputes arising out of corporate acquisitions into two categories. Id. at 1214-16. The first category included disputes in which a carrier's parent company acquired or formed a new subsidiary and transferred existing union work from a unionized subsidiary to the new subsidiary.[10] The second included disputes in which the parent acquired or formed a new subsidiary and did not transfer any work performed by the existing, unionized subsidiary to the new subsidiary but instead used the new subsidiary to perform "new" work – i.e., work not previously performed by the unionized subsidiary.[11] The court found that cases in the first category did not involve representation disputes but that those in the second category did. Id. It then held that Gateway Western's parent company had not used Gateway Eastern to

---

[10] The court found that its prior decision in Burlington Northern Railroad Co. v. United Transportation Union, 862 F.2d 1266 (7th Cir. 1988), and the Ninth Circuit's decision in Air Line Pilots Association International v. Transamerica Airlines, Inc., 817 F.2d 510 (9th Cir. 1987), fell within this category.

[11] The court found that Air Line Pilots Association, International v. Texas International Airlines, Inc., 656 F.2d 16 (2d Cir. 1981), fell within this category.

12

perform work previously performed by Gateway Western's unionized workers. Rather, Gateway Eastern only performed work that Conrail employees had performed prior to the acquisition – i.e., work that was truly "new" to the Gateway system. Id. at 1215-16. As described by the court, "[Gateway Western's] existing business is not being diverted to a subsidiary under its control, and the work of [Gateway Western's] unionized employees appears to be unaffected." Id. Rather, "the work performed by [Gateway Eastern] actually appears to be 'new;' it is not simply work that the parent company was able to obtain by evading its obligations under a collective bargaining agreement." Id. Thus, the case fell within the second category.

In Gateway Western, the court did not explain its rationale for distinguishing between the two categories of cases. However, it appears that the distinction is based on whether the case requires the court to determine the scope of the NMB's certification. Where a carrier diverts to a new subsidiary work that unquestionably falls within a collective bargaining agreement between the carrier and a certified union, the court can resolve the dispute without deciding whether the union's certification extends to the employees of the new subsidiary. The only issue is whether the diverted work falls within the collective bargaining agreement between the union and the existing subsidiary. It is no different than when a carrier diverts the union's existing work to a non-union subcontractor in violation of the terms of a collective bargaining agreement – a situation that clearly would not give rise to a representation dispute. See, e.g., Int'l Ass'n of Machinists & Aerospace Workers v. US Airways, Inc., 358 F.3d 255, 256 (3d Cir. 2004) (holding that dispute over subcontracting of union work gave rise to minor dispute). In contrast, where the union seeks to expand its existing certification to cover new work and new workers that the

13

parent brought into the system through its acquisition of a new subsidiary, then the court cannot resolve the dispute without determining whether the acquisition created a "single transportation system" composed of the two subsidiaries – a determination that belongs to the NMB exclusively. In other words, in the second category of cases, the court cannot simply apply the NMB's existing certification but must determine whether a single transportation system exists such that the certification should be expanded to include the new subsidiary.

The present dispute between IBT and Frontier/RAH falls within the first category. RAH intends to transfer work currently performed by Frontier's union mechanics to its non-union subsidiary, Republic. RAH does not contend that the work that will be performed in Milwaukee is "new." Thus, to resolve the parties' dispute, I need not determine whether a single transportation system exists. Although RAH contends that it is allowed to transfer this existing work because it has formed a single transportation system in which IBT represents only the minority of workers, this contention is not relevant because RAH cannot use the arguable existence of a single transportation system as an affirmative defense to justify its disregard of the Frontier-IBT collective bargaining agreement. Instead, as I have explained, the RLA and NMB procedures require RAH to abide by the NMB's certification of IBT unless and until such certification is revoked. Further, IBT is not attempting to expand its certification to Republic's employees; rather, IBT seeks only to prevent RAH from transferring existing Frontier work to Republic employees. This is no different than trying to prevent RAH from transferring existing Frontier work to a non-union subcontractor, which, as noted, unquestionably does not give rise to a representation

14

dispute. Accordingly, under either ARSA or Gateway Western, this case does not present a representation dispute.

Frontier and RAH point out that if I do not find that the present case involves a representation dispute, IBT will have no incentive to seek a single carrier determination from the NMB. They further note that since Frontier and RAH cannot themselves request a single carrier determination, IBT will be able to continue its representation indefinitely, even if RAH has created a single transportation system in which IBT represents only a minority of the relevant crafts or classes. This, they argue, would lead to undesirable consequences. For example, although RAH would like to consolidate Frontier's stock-clerk operation in Milwaukee with Republic's stock-clerk operation so as to avoid paying for two such operations at the same airport, the Frontier-IBT collective bargaining agreement prevents it from doing so. (Defs.' Br. in Supp. of Mot. to Dismiss at 23.)

Nevertheless, as a result of current NMB policy, the present case does not involve a representation dispute. The NMB's policy is that existing certifications survive mergers. Therefore, IBT presently represents Frontier's mechanics-and-related and stock-clerk crafts. Frontier and RAH may regard this as bad policy, but I am nonetheless bound by it.[12] I note that although Frontier and RAH cannot ask the NMB to investigate whether the acquisition created a single transportation system and whether IBT still represents the majority of the crafts or classes, their employees can. Thus, if Republic's mechanics and

---

[12]In a recent representation proceeding, a carrier argued that the NMB's policy of leaving existing certifications intact after mergers is inconsistent with the RLA, inasmuch as it allows a minority union to hold its position indefinitely. See Delta Airlines and Northwest Airlines, 36 N.M.B. 36, 38 (2009). However, the NMB declined to address this issue. Id. at 53. In the present case, RAH and Frontier do not argue that the NMB's policy is inconsistent with the RLA.

15

stock clerks believe that Frontier is now part of their "system," they may ask the NMB to investigate this issue and decertify IBT. NMB Representation Manual § 19.4. At present, however, no employee group disputes IBT's representation, and therefore no representation dispute exists.

**B.     Merits of Preliminary Injunction Motion**

The next step is to determine whether the parties' dispute is major or minor. IBT contends that it is a major dispute, and RAH and Frontier take no position, choosing instead to rely on their representation-dispute argument. However, it is clear that if the present case does not involve a representation dispute, it involves a major dispute. RAH and Frontier do not contend that the Frontier-IBT collective bargaining agreements even arguably allow RAH to transfer Frontier work to non-union employees. Rather, RAH admits that it is simply disregarding the collective bargaining agreements based on its conclusion that it has formed a single transportation system in which IBT represents only the minority of the crafts or classes. Thus, because the present case does not involve a dispute over the meaning of a collective bargaining agreement, it is a major dispute rather than a minor dispute. See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 307 (1989) (stating that dispute is major rather than minor when carrier does not assert that its action is at least arguably justified by the collective bargaining agreement).

The court's role in a major dispute is limited. Major disputes "are designed to be settled by the parties themselves through negotiation and mediation under the auspices of the National Mediation Board." Burlington N. R.R. Co., 862 F.2d at 1272. If mediation fails, the RLA allows for acceptance or rejection of binding arbitration as well as cooling-off

16

periods. Id. During this time, the status quo prevails and the parties are not permitted to resort to self-help, such as strikes or other economic weapons. Id. If after this time the parties are unable to agree, then they may resort to self-help. Id. Once the parties are authorized to use self-help, the Norris-LaGuardia Act, 29 U.S.C. §§ 106-115, prohibits a federal court from enjoining the exercise of economic weapons. Id. However, if either party engages in self-help and disrupts the pre-dispute status quo during the time when self-help is prohibited, a federal court may enjoin the disruption until such time as the parties are authorized to engage in self-help. Gateway Western, 78 F.3d at 1213.

In the present case, RAH and Frontier are admittedly engaging in premature self-help.[13] As of February 24, 2010, they have transferred some of Frontier's mechanics-and-related and stock-clerk work to non-union Republic employees in violation of the Frontier-IBT collective bargaining agreements. (Henson Decl. ¶ 19.) Further, they plan to transfer a large quantity of other such work to Republic employees in July 2010. (Henson Decl. ¶ 17.) RAH and Frontier do not contend that they have complied with the major dispute-resolution procedures that precede self-help, such as negotiation, mediation under the auspices of the NMB, binding arbitration, or cooling-off periods. Thus, IBT is entitled to an injunction restoring the status quo as it existed prior to February 24, 2010 – namely, an

---

[13]In their brief, RAH and Frontier point out that Section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, requires courts to hold evidentiary hearings before issuing injunctions in labor disputes. (Br. in Supp. of Mot. to Dismiss at 12 n.5.) However, RAH and Frontier go on to state their opinion that all relevant facts are undisputed and that the court can convert the present motion into one for summary judgment. (Id.) Having reviewed the parties' affidavits, I find that all relevant facts are indeed undisputed and that therefore an evidentiary hearing is unnecessary. See United Air Lines, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers, 243 F.3d 349, 363 n.9 (7th Cir. 2001) (where parties agree to submit case to court on written record, Norris-LaGuardia Act does not require an evidentiary hearing).

17

injunction requiring RAH and Frontier to assign all Frontier mechanics-and-related and stock-clerk work to Frontier employees in accordance with the Frontier-IBT collective bargaining agreements.

The only argument that RAH and Frontier make in opposition to IBT's motion for an injunction (other than that I lack jurisdiction over this case) is that IBT has unclean hands and that therefore, by virtue of Section 8 of the Norris-LaGuardia Act, it has no right to injunctive relief. Section 8 of the Norris-LaGuardia Act provides that

> [n]o restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary mediation.

29 U.S.C. § 108.

RAH and Frontier's clean-hands argument is essentially a restatement of their argument that the present case involves a representation dispute. They argue that because IBT has not initiated representation proceedings before the NMB or sought to resolve the representation dispute through negotiation with the carrier, it has failed to make every reasonable effort to settle the dispute either by negotiation or with the aid of available governmental machinery. However, as discussed, the present case does not present a representation dispute because the carrier's employees do not disagree about representation. Although RAH and Frontier dispute IBT's status as the proper representative, their views are irrelevant and they are required to honor the NMB's existing certification. Thus, IBT has no obligation to initiate representation proceedings before the NMB or negotiate with the carrier over representation issues. Rather, since RAH and

18

Frontier's refusal to abide by the Frontier-IBT collective bargaining agreements gives rise to a major dispute, IBT was required to follow major dispute-resolution procedures. As far as I can tell, RAH and Frontier do not contend that IBT has failed to follow such procedures.[14] Therefore, I will grant IBT's motion for a preliminary injunction restoring the status quo.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

**IT IS FURTHER ORDERED** that IBT's motion for preliminary injunction is **GRANTED**. A judgment shall be entered requiring RAH and Frontier to restore the status quo as it existed on February 24, 2010. That is, RAH and Frontier shall restore all Frontier mechanics-and-related and stock-clerk work to Frontier employees pursuant to the Frontier-IBT collective bargaining agreements.

Dated at Milwaukee, Wisconsin, this 20 day of April, 2010.

/s_____
LYNN ADELMAN
District Judge

---

[14]The portion of RAH and Frontier's brief relating to their clean-hands argument is so colored by their belief that this case presents a representation dispute that I cannot conclusively determine whether they contend that IBT has failed to follow applicable major dispute-resolution procedures. My best interpretation of their brief is that they do not so contend. (See Br. in Opp. to Mot. for Prelim. Inj. at 5 (stating that "the fundamental underlying flaw in IBT's request for a preliminary injunction is that it has failed to exhaust both private and governmental avenues that are clearly available to it to resolve the representation issues that underlie all of its claims in this case" (Emphasis added).)

19

Case 2:10-cv-00203-LA   Filed 04/20/10   Page 19 of 19   Document 32