UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS AIRLINE DIVISION,

        Plaintiff,                                        Case No. 2:10-cv-00203-LA

    v.

FRONTIER AIRLINES, INC. and
REPUBLIC AIRWAYS HOLDINGS, INC.,

        Defendants.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL STAY AND POSTING OF BOND**

## INTRODUCTION

Plaintiff IBT has manipulated the facts as well as the law opposing Defendants' Motion for a Partial Stay and the Posting of a Bond pending the Seventh Circuit's interlocutory review of this Court's April 20, 2010 rulings. As argued below, Defendants' request for a partial stay easily satisfies the appropriate legal criteria and is justified on the facts in this case. Additionally, Plaintiff's opposition is disingenuous as it discloses IBT's real purpose is once again to attempt to enjoin Defendants from exercising their management right to furlough for lack of work some or all of the "former" Frontier mechanics who previously voluntarily transferred to Milwaukee and hired on as Republic employees in connection with RAH's planned relocation of Frontier aircraft heavy maintenance work to that city. As IBT recently acknowledged by filing a grievance protesting RAH's decision to continue to subcontract heavy maintenance work to the Aeroframe Corporation in Louisiana, the issue of RAH's right to subcontract this work is a classic minor dispute requiring interpretation of the Frontier/IBT collective bargaining agreement

and falls within the exclusive jurisdiction of the parties' System Board of Adjustment. Case law under the RLA makes crystal clear that management is free to act in connection with a minor dispute with the System Board responsible for determining <u>after the fact</u> whether a contract violation has occurred and, if so, the appropriate remedy. Even the IBT should concede injunctive relief in cases involving minor disputes is totally inappropriate except in extraordinary circumstances not present in the instant case. Whatever the Court decides to do with Defendants' Motion for a Partial Stay, therefore, it is important that it makes clear that it is not enjoining these potential furloughs.

IBT's opposition to Defendants' request for a bond in the amount of $50,000 in the event Defendants' Motion for Partial Stay is granted and $75,000 if such Motion is denied is similarly flawed. The Seventh Circuit case cited by the IBT as allegedly disallowing attorneys fees to be included in calculating an appropriate bond is inapposite. Section 7 of the Norris LaGuardia Act ("NLA") upon which Defendants rely for including attorneys fees in calculating the bond makes no distinction whether it is a labor union or an employer that is seeking the bond. There is, moreover, ample authority in other jurisdictions supporting the fact that <u>all</u> of the procedural requirements set forth in the NLA apply equally to employers and labor organizations. IBT's remaining criticisms of Defendants' bond request amount to insignificant quibbles not warranting a reply.[1]

---

[1] This is particularly the case when we are only talking about a <u>bond</u> requirement. Defendants, of course, will still have to prove their actual out of pocket losses with appropriate specificity when, and if, the Seventh Circuit reverses the Court's ruling granting injunctive relief in this case.

# ARGUMENT

## A.     Defendants Have Satisfied the Criteria for Granting a Partial Stay

The parties are in agreement concerning the well-recognized criteria governing a district court's grant of a full or partial stay. Similarly, Defendants agree with IBT's reference to courts generally applying a "sliding scale" approach balancing the likelihood of success against the amount of irreparable harm. Here, whatever disagreement between the parties or skepticism the Court might have that Defendants will actually prevail on their appeal, any balance of hardship analysis tips the scale in favor of granting Defendants' Motion for a Partial Stay.

Defendants accept that they are unlikely to persuade this Court that the Seventh Circuit will reverse its ruling. That is a truism that is present any time there is an appeal of a district court ruling. Suffice it to say, Defendants will attempt to do a much better job highlighting the fundamental conflict that exists between the RLA's statutory requirement that a labor organization must actually represent a majority of all employees in a system-wide craft or class (such as mechanics and related employees) and the NMB's current policy adopted after the D.C. Circuit's 1994 decision in *Railway Labor Executives Association v. NMB*, 29 F.3d 655 (1994) specifying that only a labor organization (or a group of employees consisting of at least 35% of the entire craft or class) can file a single carrier application designed to test or clarify the representative status of any labor organization following an acquisition and merger of two airlines. The argument will definitely focus more directly on how an agency's policy must be consistent with the words of the legislation it has been established to administer. It will also emphasize the appropriate role that federal courts play in maintaining harmony between Congressional legislation and administrative policy making. It is Defendants' hope that these arguments, combined with their ability to demonstrate that experts on both the management and

organized labor side all recognize the absurdity of the instant situation in which an admitted minority representative of the system-wide Republic maintenance and related craft or class—in this case the IBT—is permitted to limp along representing Frontier mechanics while throwing obstacles and impediments in the way of the efficient and rational integration of Republic's maintenance operations, will convince the Seventh Circuit to intervene. Will Defendants be successful in their argument? Clearly, know one knows. The fact remains there is a legitimate basis to bring this issue to the forefront—in this case before one of our nation's most respected courts. Defendants sincerely believe they will prevail on this appeal and respectfully urge the Court to at least accept this as a reasonable possibility when weighing the appropriateness of granting a partial stay.

It is in the area of balance of hardships, however, that Defendants take their strongest exception to the IBT's opposition arguments. Whether the pending/potential layoff of some or all of the 19 former Frontier mechanics that voluntarily transferred to Milwaukee and accepted employment as Republic mechanics is categorized as "harm to Defendants" or "harm to the public" is meaningless sophistry. The end result is the same. These individuals will be harmed—significantly harmed if, as the result of no stay being granted pending appeal, they end up being furloughed for lack of work at the Republic maintenance base in Milwaukee.[2] In contrast, there will be <u>no</u> harm to these individuals, or to the IBT, if the instant Motion for a Partial Stay is granted. Pending resolution of Defendants' appeal, all of the 19 individuals will remain gainfully employed by Republic working on a variety of RAH owned aircraft. This is

---

[2] The supplemental Declaration of Jeff Domrese dated June 24, 2010 provides an updated explanation why these furloughs will be necessary, and why IBT Declarant Hennelly is simply wrong in his perception of the facts surrounding the maintenance work currently being performed in Milwaukee.

exactly what they signed up for when they voluntarily agreed to transfer to Milwaukee.[3]

Insofar as the IBT itself is concerned, it is true the IBT will arguably be temporarily deprived of some dues and perhaps even some pension contributions for some interim period of time—but all such sums can/will be recouped if Defendants' appeal is unsuccessful. The alleged potential psychic harm to the IBT as an institution is simply too attenuated to seriously consider in this analysis.

In sum, Defendants return to the argument they asserted in their opening memorandum. The likelihood of success criteria can be placed almost anywhere on the spectrum, but the balance of hardships criteria overwhelmingly favors granting Defendants' Motion for a Partial Stay in this case.

**B.    Plaintiff IBT's Attempt to Turn the Court's Preliminary Injunction into a Minor Dispute Injunction Should be Squarely Rejected**

While Defendants obviously strongly disagree with the IBT's arguments concerning the criteria associated with granting a partial stay in this case, the more disturbing discussion in IBT's Opposition Brief relates to its continued effort to maneuver the Court into the position of improperly intervening in area of a minor dispute. The IBT's opposition is filled, frankly dominated, by the argument (largely supported by inaccurate facts) that RAH's current subcontracting of heavy maintenance work to the Aeroframe Corporation in Louisiana violates the Frontier/IBT collective bargaining agreement and is the root cause of what the IBT portrays as "unnecessary" furloughs. *See*, pp. 4-7 of IBT's Opposition Brief as well as accompanying

---

[3] The IBT's argument that the "former" Frontier employees who moved to Milwaukee will be "deprived of union representation" rings hollow when one considers that this was their exact decision when they opted to transfer to Milwaukee as Republic employees. Additionally, the fact that approximately 625 other RAH mechanics working on a system-wide basis for Chautauqua, Republic and Shuttle America airlines have, to date, voluntarily decided that they prefer non-union status to representation by the IBT casts further doubt on this prong of the IBT's harm argument.

-5-

Case 2:10-cv-00203-LA   Filed 06/24/10   Page 5 of 10   Document 63

Supplemental Declaration of John Hennelly.  The IBT's brief repeatedly suggests that the Court should intervene to prevent this from happening.

The IBT's argument is highly disingenuous and nothing more than a continuation of the argument it made in Chambers during the parties' status conference on May 20.  There is simply no question that Defendants' right to continue subcontracting heavy maintenance work to Aeroframe under the circumstances in this case (as well as its earlier action furloughing Frontier maintenance employees in Denver after an insufficient number of such employees had indicated a willingness to transfer to Milwaukee) is a question of contract interpretation involving, *inter alia,* Article 2, Section 3 of the Frontier/IBT collective bargaining agreement and is a <u>minor dispute</u> within the meaning of the RLA.  Indeed, the IBT has very recently explicitly acknowledged this fact by filing a <u>grievance</u> challenging this very action.  (See Supplemental Declaration of Jacalyn Peter dated June 24, 2010).  As argued previously in Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, the case law under the RLA is very clear that federal district courts do not have jurisdiction to enjoin management action involving minor disputes.  *See e.g. Brotherhood of Maintenance of Way Employees v. Union Pac. R.R. Co.*, 358 F.3d 453 (7th Cir. 2004); *Chicago & North Western Transp. Co. v. Railway Labor Executives Asso.*, 855 F.2d 1277 (7th Cir. 1988);  *Brotherhood of Railway, Etc v. Atchison,* 847 F.2d 403 (7th Cir. 1988).  The only accepted exception to this "no injunction" rule is where management's planned action would effectively render a subsequent system board hearing moot—which even the IBT has not suggested surrounds these projected furloughs.

In summary, Defendants have argued and sincerely believe that a partial stay is justified in this case.  Should, however, Defendants' Motion for a Partial Stay be denied, Defendants respectfully request that the Court make clear that it is in no way ruling on the merits of the issue

-6-

Case 2:10-cv-00203-LA    Filed 06/24/10    Page 6 of 10    Document 63

whether Defendants have or had the right to subcontract heavy maintenance work on Frontier aircraft to Aeroframe Corporation in Louisiana under the circumstances presented in this case.

C.     **Defendants' Request for a Bond that Includes Attorneys Fees Should be Granted.**

The IBT's primary argument opposing Defendants' request for a bond is that Defendants' inclusion of estimated attorneys fees handling the interlocutory appeal is inappropriate because the NLA's procedural protections set forth in Section 7 of the Act (which specifically allow attorneys fees as part of a bond during the appeal of a preliminary injunction) apply only in favor of labor unions and not employers. The IBT's reliance on *Brotherhood of Locomotive Engineers v. Baltimore and Ohio R.R.,* 310 F.2d 513 (7th Cir. 1962), for this remarkable proposition is unpersuasive. That case does not deal, even remotely, with the question of whether an employer may collect attorneys fees under Section 7 of the NLA. In *Brotherhood of Locomotive Engineers*, the union petitioned the district court for a preliminary injunction to enjoin the carrier from effectuating changes to work rules. *Id.* at 514. The district court denied the union's request for a preliminary injunction and then denied the union's second motion for a preliminary injunction. *Id.* After the denial of its second motion, the union filed both an appeal with the Seventh Circuit and a motion for an injunction pending the determination of the appeal with the district court. *Id.* at 514-15. The district court granted the union's injunction during the pendency of the appeal and ordered the union to post a $10,000 bond. *Id.* at 515. The carrier immediately appealed the district court's decision to the Seventh Circuit. *Id.* In a preliminary decision, the Seventh Circuit required the union to post an additional bond of $90,000 as further security. *Id.*

In its brief to the Seventh Circuit, the carrier argued that the district court exceeded its jurisdiction in granting the injunction during the pendency of the appeal. *Id.* at 516.

Specifically, the carrier argued that the district court had not complied with Sections 4, 7, or 8 of the NLA. *Id.* After reviewing the legislative history behind the NLA, the Court determined that nothing in the NLA prohibited the district court from issuing the injunction during the pendency of the appeal. *Id.* at 517-18. The Court ultimately concluded that the NLA did not "deprive the district court of the power to grant the injunction pending appeal" and affirmed the order. *Id.* at 518.

Notably, *Brotherhood of Locomotive Engineers* contains no discussion whatsoever of whether a union must post a security bond including reasonable attorneys fees pursuant to Section 7 of the NLA. To the contrary, the only discussion of a bond contained in the case is the Court's note that the district court ordered the union to post a bond of $10,000 and the Court ordered the union to post an additional bond of $90,000. *Id.* at 514-15. The IBT's extrapolation from the case that a union is never obligated to post a security bond that includes reasonable attorneys fees under the NLA is not drawn from the text of the actual case, nor is it supported by any other federal case.

In contrast to the IBT's claim, other Circuits have held that a union must post a security bond that includes reasonable attorneys fees under Section 7 of Norris LaGuardia. For example, in *IAM v. Eastern Airlines, Inc.*, 925 F.2d 6 (1st Cir. 1991), the district court granted the union's motion for a preliminary injunction on the condition that the union post a $50,000 bond. The First Circuit subsequently reversed the grant of the injunction, and the carrier moved in the district court for an award to cover the damages it incurred, including attorneys fees, pursuant to Section 7 of the NLA. *Id.* at 8. The district court granted the carrier's motion and ordered judgment for $50,000 in the carrier's favor. *Id.* The union thereafter appealed to the First Circuit, claiming that the carrier should not be allowed to recover its attorneys fees. *Id.* The First

-8-

Circuit denied the union's appeal, noting in strong language that the posting of a security bond which includes reasonable attorneys fees is a jurisdictional prerequisite to obtaining a temporary injunction under the NLA. *Id.* at 9-10. According to the Court, "Section 7 of the Norris-LaGuardia Act clearly expresses the congressional intent to require that preliminary injunction undertakings in labor disputes include a provision for reasonable attorneys fees." *Id.* at 9.

Similar holdings exist in other jurisdictions. *See UAW v. LaSalle Machine Tool, Inc.,* 696 F.2d 452 (6th Cir. 1982) (union was obligated to pay for the costs and damages, including attorneys fees, incurred by its injunction suit); *Michigan American Federation of State County and Municipal Employees Council 25 v. Matrix Human Services,* 589 F.3d 851 (6th Cir. 2009) (ordering union to pay security bond, including reasonable attorneys fees, to employer after federal district court dissolved a state court temporary restraining order); *Aluminum Workers Internat'l Union v. Consolidated Aluminum Corp.*, 696 F.2d 437 (6th Cir. 1982) (where status quo injunction was improperly issued, union ordered to pay damages, including reasonable attorneys fees, to the employer).

The IBT's position that it should not be required to post a security bond that includes projected attorneys fees is, in sum, and with all due respect, unsupported by case law or the literal text of Section 7 of the NLA (which makes absolutely no distinction between whether it is an employer or union that is appealing a preliminary injunction). Defendants, accordingly, maintain their request that the bond in this case include Defendants' projected attorneys fees.

### **CONCLUSION**

For the foregoing reasons, and the reasons stated in their opening brief, Defendants request that the Court grant their Motion for Partial Stay and Posting of Bond.

Dated this 25th day of June, 2010.

-9-

Case 2:10-cv-00203-LA   Filed 06/24/10   Page 9 of 10   Document 63

FOLEY & LARDNER LLP


_s/ Brian E. Cothroll_
David W. Simon
Brian E. Cothroll
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
414.297.5519 (DWS)
414.297.5567 (BEC)
414.297.4900 (facsimile)
dsimon@foley.com
bcothroll@foley.com


Norman A. Quandt
FORD & HARRISON LLP
271 17th Street NW, Suite 1900
Atlanta GA 30363
404.888.3800
404.888.3863 (facsimile)
nquandt@fordharrison.com

Counsel for Defendants