# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**INTERNATIONAL BROTHERHOOD**
**OF TEAMSTERS AIRLINE DIVISION**
        **Plaintiff,**

     **v.**                               **Case No. 10-C-0203**

**FRONTIER AIRLINES, INC. and**
**REPUBLIC AIRWAYS HOLDINGS, INC.**
        **Defendants.**

---

## DECISION AND ORDER

On April 20, 2010, I granted in part plaintiff International Brotherhood of Teamsters Airline Division's ("IBT's") motion for a preliminary injunction under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.  I ordered defendants, Frontier Airlines, Inc. ("Frontier") and Republic Airways Holdings, Inc. ("RAH"), to restore the work of certain crafts or classes to Frontier employees in accordance with the IBT-Frontier collective bargaining agreements.  Defendants appealed this ruling and their appeal is pending.  Before me now are defendants' motion for clarification and/or reconsideration of my decision, defendants' motion for a partial stay pending appeal, and defendants' motion to require IBT to post an injunction bond.  I assume familiarity with my April 20th decision and order.

### I.  MOTION FOR CLARIFICATION AND/OR RECONSIDERATION

Defendants raise several issues in their motion for clarification and/or reconsideration, most of which were resolved during a status conference I held following the entry of the preliminary injunction.  The first issue was whether the injunction is intended to be preliminary or permanent.  The injunction is only a preliminary injunction,

but the parties were confused by the fact that I directed the clerk to enter judgment pursuant to Federal Rule of Civil Procedure 58 in connection with the preliminary injunction. The parties thought that because I had directed the clerk to enter judgment that I was finished with the case. However, I directed entry of judgment because an order granting a preliminary injunction is appealable, Federal Rule of Civil Procedure 54(a) defines "judgment" as any order from which an appeal lies, and Federal Rule of Civil Procedure 58 requires the clerk to enter judgment in a separate document. Thus, the judgment is interlocutory, not a final judgment.

The second area of confusion was whether I intended to rule on all of plaintiff's claims – including its claims seeking interpretation of the collective bargaining agreements – in the preliminary injunction order. As I explained at the status conference, the answer is that I did not intend to rule on such claims. The only issues I resolved in the preliminary injunction motion were issues pertaining to whether this case involves a "representation" dispute or not. I concluded that it does not. As a corollary to this finding, I also found that plaintiff's claim involving the transfer of work to non-union employees qualified as a "major" dispute because defendants had not argued that the transfer of such work was arguably justified by the collective bargaining agreements. Instead, defendants had conceded that they were disregarding the collective bargaining agreements in their entirety based on their position that IBT was no longer the representative of the relevant crafts or classes. Finally, I found that defendants' "clean hands" argument failed because defendants had not demonstrated that plaintiff had failed to exhaust any available non-judicial remedies, as required by the Norris-LaGuardia Act, 29 U.S.C. § 108. I did not rule on any of plaintiff's claims involving interpretation of the collective bargaining agreements. Indeed, I would

2

lack jurisdiction to do so since those claims involve "minor" disputes. <u>See, e.g.</u>, <u>Burlington</u> <u>N. R.R. Co. v. United Transp. Union</u>, 862 F.2d 1266, 1271 (7th Cir. 1988). In any event, defendants have already agreed to arbitrate the parties' contract disputes (Defs.' Br. in Supp. of Stay & Bond [Docket #47] at 2 n.2), and thus these claims may be moot.

The remaining issues are whether defendants waived their right to an evidentiary hearing under the Norris-Laguardia Act, and whether defendants argued in opposition to plaintiff's motion that the policy of the National Mediation Board ("NMB") pertaining to mergers and acquisitions conflicts with the Railway Labor Act. I think my decision and order speaks for itself on these two issues, but I will offer some additional clarification.

Regarding the first issue, I determined that resolution of plaintiff's motion for a preliminary injunction and defendants' motion to dismiss did not require an evidentiary hearing because the parties had agreed on the material facts and the only question was whether I lacked subject matter jurisdiction over the case because it involved a representation dispute. Once I determined that I had subject matter jurisdiction, it was clear that IBT was entitled to a preliminary injunction because defendants were admittedly disregarding the collective bargaining agreements. Although defendants also argued that IBT had unclean hands,[1] this argument did not involve factual disputes. Defendants' clean-

---

[1]Defendants' clean-hands argument was based on Section 8 of the Norris-LaGuardia Act, which provides that

> [n]o restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary mediation.

3

hands argument was premised on the assumption (which I rejected) that the Norris-LaGuardia Act required IBT to initiate single-carrier proceedings with the NMB before coming to court and requesting injunctive relief. No one disputed that IBT had not initiated proceedings with the NMB before coming to court, and defendants in their motion for reconsideration do not describe any other factual disputes that I should have resolved before granting plaintiff's motion. Thus, I reiterate my original conclusion: no evidentiary hearing was required because the facts relevant to plaintiff's motion for a preliminary injunction and defendant's motion to dismiss were undisputed. To the extent that factual disputes will need to be resolved during future proceedings in this case, defendants are of course entitled to insist on an evidentiary hearing.

Finally, I address whether defendants argued in their motion to dismiss that the NMB's merger procedures conflict with the Railway Labor Act. <u>See</u> NMB Representation Manual § 19 (Rev. Sept. 8, 2009), <u>available at</u> http://www.nmb.gov (Click "Legal Affairs/Representation," then "Representation Manual") (last viewed July 1, 2010). This issue arises from the following footnote in my original decision and order:

> In a recent representation proceeding, a carrier argued that the NMB's policy of leaving existing certifications intact after mergers is inconsistent with the RLA, inasmuch as it allows a minority union to hold its position indefinitely. <u>See</u> <u>Delta Airlines and Northwest Airlines</u>, 36 N.M.B. 36, 38 (2009). However, the NMB declined to address this issue. <u>Id.</u> at 53. In the present case, RAH and Frontier do not argue that the NMB's policy is inconsistent with the RLA.

(Dec. & Order at 15 n.12.) In their motion for reconsideration, defendants contend that they <u>did</u> argue that the NMB's policy is inconsistent with the RLA because in one sentence

---

29 U.S.C. § 108.

in their reply brief they noted that there is "tension" between the NMB's policy that representation does not change until the NMB says so and the RLA's requirement that representation be system-wide. (See Defs.' Reply Br. [Docket #28] at 14.) However, noting this "tension" and developing an argument in favor of striking down the NMB's policy because it is inconsistent with the RLA are two entirely different things. Defendants certainly did not do the latter in their briefs. On the contrary, defendants argued that the merger procedures themselves contain a mechanism for resolving the tension. Id. ("The NMB has provided a mechanism, however, to resolve that tension. . . ."). Frankly, I find defendants' suggestion that they challenged the validity of any NMB policy disingenuous. Had defendants raised such an issue, I would have analyzed it carefully. But because they did not, I decline to modify the above passage from my prior decision and order.

## II. MOTION FOR STAY PENDING APPEAL

Before IBT filed this lawsuit, RAH and Frontier had transferred a group of nineteen mechanics and stock clerks from Denver to Milwaukee and designated them as employees of Republic rather than Frontier. However, the IBT-Frontier collective bargaining agreements require that these employees remain employed by Frontier. Thus, to comply with the preliminary injunction, defendants must reinstate these employees as Frontier employees. Defendants state that if they are required to take these employees off of Republic's payroll and put them back on Frontier's payroll, approximately nine of the employees will need to be furloughed because defendants do not have enough "Frontier" work for nineteen mechanics and stock clerks in Milwaukee.

5

Defendants move for a partial stay of the preliminary injunction so that all nineteen mechanics and stock clerks can remain on Republic's payroll and avoid being furloughed. The stay would be a partial stay because defendants would continue to abide by the preliminary injunction insofar as it requires defendants to recognize and bargain with IBT as the representative of Frontier's mechanics and stock clerks.

IBT opposes defendants' motion for a partial stay and contends that Frontier would have enough work in Milwaukee for all nineteen mechanics and stock clerks if Frontier would stop subcontracting maintenance work to a non-union contractor located in Lake Charles, Louisiana. IBT argues that the IBT-Frontier collective bargaining agreements prohibit Frontier from subcontracting work when doing so would result in the furlough of regular Frontier employees. Defendants dispute this reading of the collective bargaining agreements and contend that the agreements allow them to continue subcontracting maintenance work to Lake Charles.

Before proceeding further it is important to make one thing clear: the dispute between Frontier and IBT over whether the collective bargaining agreements allow Frontier to continue subcontracting work to Lake Charles is a minor dispute that I may not resolve. This dispute must be resolved through the ordinary grievance procedures under the collective bargaining agreements. In this regard, I note that IBT has already filed a grievance on this issue, and Frontier has agreed to participate in the grievance process. Accordingly, I take no position as to whether the collective bargaining agreements allow Frontier to subcontract work to Lake Charles if doing so would result in the furlough of any of the nineteen employees affected by the preliminary injunction. However, I will assume for purposes of defendants' motion to stay that if the stay is not granted defendants will

6

furlough approximately nine mechanics and stock clerks whether or not the collective bargaining agreements permit them to do so.

Regarding the merits of defendants' motion, Federal Rule of Civil Procedure Rule 62(c) provides that a district court may grant a stay pending appeal following entry of an order granting an injunction. In deciding whether to issue a stay, I must consider: (1) the likelihood of appellants prevailing on the merits of their appeal; (2) whether appellants will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies. See Cavel Int'l, Inc. v. Madigan, 500 F.3d 544, 546-49 (7th Cir. 2007); Hinrichs v. Bosma, 440 F.3d 393, 396 (7th Cir. 2006); Indianapolis Colts v. Mayor & City Council of Baltimore, 733 F.2d 484, 486 (7th Cir. 1984); Adams v. Walker, 488 F.2d 1064, 1065 (7th Cir. 1973). If an appeal has no merit at all, the request for a stay should be denied. Cavel, 500 F.3d at 547. If, however, appellants have some likelihood of success on appeal, then the court applies a "sliding scale" approach, under which the court weighs the likelihood of success and extent of irreparable harm likely to be suffered by appellants against the harm likely to be suffered by appellees if a stay is entered. Id.

I first discuss defendants' likelihood of success on the merits of the appeal. Although defendants have not explained the arguments they plan to raise on appeal in detail, it appears that they intend to raise an argument that they did not make in this court: that the NMB's merger procedures are inconsistent with the RLA and, therefore, invalid. From what I can tell, defendants plan to argue that the courts must invalidate § 19.7 of the NMB's Representation Manual, pursuant to which an existing union certification remains intact even after a merger and the arguable creation of a single transportation system. As

7

explained above, in this court defendants did not develop any such argument; rather, they merely noted in one sentence in their reply brief that there was "tension" between the NMB's procedures and the RLA. Because arguments not properly developed in the district court usually cannot be raised on appeal, it is likely that the Seventh Circuit will not consider this argument. See, e.g., Republic Tobacco Co. v. N. Atl. Trading Co., Inc., 381 F.3d 717, 728 (7th Cir. 2004) ("Appellate review is not designed to serve as an unsuccessful party's second bite at the apple – an opportunity to raise issues and arguments that were not brought forth below."). This is especially true given that defendants did not even hint at this issue until they filed their reply brief. See Harper v. Vigilant Ins. Co., 433 F.3d 521, 528 (7th Cir. 2005) (arguments poorly developed before the district court are waived, as are arguments developed for the first time in a reply brief). Because it appears that the only argument defendants will raise on appeal is one that they have forfeited, I find that defendants have a low likelihood of success on appeal.

Turning to the issue of irreparable harm, I note that defendants concede that the preliminary injunction will not cause them any such harm. Rather, the harm about which defendants express concern is the harm to the nine or so mechanics and stock clerks that defendants might furlough. Defendants thus make their irreparable harm argument under the "public interest" prong rather than the "irreparable harm" prong. In any event, I find that defendants' threat to furlough these nine employees is not a reason to stay enforcement of the preliminary injunction. These employees are represented by IBT and, as far as the record reveals, do not dispute that IBT is their proper representative. Given the position they have taken in this lawsuit, IBT apparently believes that the employees will be better off if they are reinstated as Frontier employees – even if reinstatement puts them at risk

8

of being furloughed.  Nothing in the record indicates that any of the affected employees prefers to stay on Republic's payroll or otherwise disagrees with IBT's handling of this issue.  Thus, the record indicates that the public interest favors enforcement of the preliminary injunction.

Because no factor favors entry of a stay pending appeal, defendants' motion for a stay will be denied.

### III.  BOND

The remaining issue is the proper amount of the injunction bond that IBT must post. Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction only if the movant posts a bond "in an amount sufficient to pay the costs and damages sustained by any party found to have been wrongly enjoined or restrained." When setting the amount of the bond required by Rule 65(c), a court normally does not consider the non-movant's attorneys' fees.  However, Section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, requires the court to consider the non-movant's "reasonable attorney's fee" when setting the amount of the bond.   IBT contends that this part of the Norris-LaGuardia Act applies only when a court enjoins union activity and that therefore it does not apply in the present case, in which the employer is the party enjoined.

However, Section 7 makes no distinction between unions and employees.  The plain text of the provision requires the "complainant" to post a bond that includes attorneys' fees, and it does not suggest that the term "complainant" excludes unions.  Further, IBT cites no case in which a court held that Section 7 applies to employers but not unions, and defendants have cited cases in which unions were required to post bonds covering the

9

employer's attorneys' fees.  See Int'l Ass'n of Machinists & Aerospace Workers v. Eastern Airlines, Inc., 925 F.2d 6, 9-10 (1st Cir. 1991); Aluminum Workers Int'l Union, AFL-CIO v. Consol. Aluminum Corp., 696 F.2d 437, 447 (6th Cir. 1982).  Although IBT points to language in a Seventh Circuit opinion stating that the Norris-LaGuardia Act is a "charter of the rights of labor against capital," Bhd. of Locomotive Eng'rs v. Baltimore & Ohio R.R. Co., 310 F.2d 513, 518 (7th Cir. 1962), the cited case has nothing to do with the bond required by Section 7 and therefore is not instructive on this issue.  Thus, I will require IBT to post a bond that is high enough to cover the reasonable attorneys' fees incurred by defendants in seeking to dissolve the preliminary injunction.

Defendants request that I require IBT to post a bond in the amount of $75,000. This amount includes $50,000 for attorneys' fees, $20,000 for contributions to the IBT pension fund, and $5,000 for potential wage claims that the nineteen employees may make as a result of having been taken off of the Frontier payroll for a short period of time.  After reviewing the declaration of defendants' counsel, I am satisfied that $50,000 is a reasonable estimate for attorneys' fees, especially because I am required to err on the high side when setting the amount of the bond, as damages for a wrongful injunction are limited to the amount of the bond.  See Mead Johnson & Co. v. Abbott Labs., 201 F.3d 883, 888 (7th Cir. 2000). Further, I find that the $5,000 representing potential wage claims by the nineteen employees is reasonable.  However, I will not include the $20,000 in pension contributions in the amount of the bond.  IBT argues that if defendants make pension contributions in accordance with the injunction and it is later determined that the injunction was erroneous, defendants will be entitled to reimbursement from the pension fund of such payments pursuant to 29 U.S.C. § 1103(c)(2)(A)(ii), which provides that a pension

10

administrator may return payments that the employer makes "by a mistake of fact or law." See also UIU Severance Pay Trust Fund v. Local Union No. 18-U, 998 F.2d 509, 512-13 (7th Cir. 1993) (holding that employer can enforce right to return of pension contributions mistakenly made). Defendants do not respond to this argument in their reply brief, and so I consider defendants to have forfeited their right to oppose it. I therefore accept IBT's argument without further analysis and assume that defendants will be entitled to the return of any pension contributions made pursuant to the injunction if the injunction is found to be erroneous. Accordingly, I will require IBT to post a bond of $55,000.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for reconsideration and/or clarification is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that defendants' motion for a partial stay pending appeal is **DENIED**.

**FINALLY, IT IS ORDERED** that defendants' motion for a bond is **GRANTED IN PART**. IBT shall post a bond with the clerk of court in the amount of $55,000. This bond shall remain in effect until further court order.

Dated at Milwaukee, Wisconsin, this 1 day of July, 2010.


/s_____
LYNN ADELMAN
District Judge